STATE EX REL. KATHERINE A. NELSON, BY
HERBERT NELSON, HER GUARDIAN AD LITEM,
v. GERALD ALLEN NELSON.

216 N. W. 2d 140.

March 8, 1974—No. 44059.

*Thornton & Thornton* and *J. G. Thornton,* for appellant.

*Harlan L. Nelson,* County Attorney, and *Bernard L. Bodien,* Assistant County Attorney, for respondent.

Heard before Knutson, C. J., and Otis, Peterson, and Mulally, JJ., and considered and decided by the court.

PETERSON, JUSTICE.

The issue for decision is whether a nonresident putative father of an illegitimate child born to a resident mother, the act of conception having allegedly occurred in this state, may be subjected to the jurisdiction of a court in this state upon a complaint of fathering and failing to support the child.[1] The more precise

---

[1] The complaint was made pursuant to Minnesota statutes providing for a determination of paternity and the imposition of financial liability upon the father, of which the following are most relevant: Minn. St. 257.251. "The father of a child born out of wedlock is liable, whether or not the child is born alive, for the reasonable expense of the mother's pregnancy and confinement, including her suitable maintenance for not more than eight weeks next prior and not more than eight weeks thereafter, and for the education, necessary support and funeral expenses of the child. * * *"

Minn. St. 257.252. "Paternity may be determined upon the civil complaint of the mother, child, or the public authority chargeable by law with the support of the child. If paternity has been determined or has been acknowledged according to the laws of this state, the liabilities of the father may be enforced in the same or other proceedings (1) by the mother, child, or the public authority which has furnished or may furnish the reasonable expenses of pregnancy, confinement, education, necessary support, or funeral expenses, or (2) by other persons to the extent that they have furnished the reasonable expenses of pregnancy, confinement, education, necessary support, or funeral expenses."

Minn. St. 257.253. "A proceeding for the determination of paternity is initiated by filing a verified complaint of the mother, child, or the

issue is whether this paternity complaint alleges a "tort" within the meaning of our long-arm statute, Minn. St. 543.19,[2] for defendant does not otherwise assert that such application of the statute would be a denial of due process. We hold that the long-arm statute does apply and accordingly affirm the order of the district court denying defendant's motion to quash the return of service and to dismiss the action for lack of personal jurisdiction.

The thesis of defendant is that jurisdiction in paternity proceedings was not contemplated by the long-arm statute because no such cause of action was recognized as a "tort" at common law and because no "injury or property damage" is involved. The question, however, is not so much whether the alleged conduct is technically a tort but, rather, whether it was of a tortious nature involving sufficient minimum contacts with the forum to allow the long-arm statute to be constitutionally applied. As we have before stated, "the most basic interest of our legislature in enacting § 543.19 was to afford maximum protection to this state's residents injured by acts of nonresidents; that is, to extend the extra-territorial jurisdiction of our courts to the maximum limits consistent with constitutional limitations." Hunt v. Nevada State Bank, 285 Minn. 77, 96, 172 N. W. 2d 292, 304 (1969), certiorari denied, 397 U. S. 1010, 90 S. Ct. 1239, 25 L. ed. 2d 423 (1970); reiterated in Mid-Continent Freight Lines,

---

public authority chargeable by law with the support of the child, in the district court of this state, and by personal service upon the defendant of a copy of the verified complaint setting the date and place for appearance of the defendant before the district court."

[2] Minn. St. 543.19 provides in part: "Subdivision 1. As to a cause of action arising from any acts enumerated in this subdivision, a court of this state with jurisdiction of the subject matter may exercise personal jurisdiction over any * * * non-resident individual * * * in the same manner as if * * * he were a resident of this state. This section applies if, in person * * * the * * * non-resident individual:

* * * * *

"(c) Commits any tort in Minnesota causing injury or property damage * * *."

Inc. v. Highway Trailer Industries, Inc. 291 Minn. 251, 190 N. W. 2d 670 (1971).

The precedent of other jurisdictions supports our rejection of defendant's contentions. The Supreme Court of Illinois, although construing a long-arm statute using the words "tortious act" rather than the word, "tort," in two cases declined to give technical meaning to such words, holding that the statute of that state was intended to assert jurisdiction to the extent permitted by the constitutional limitations of due process. In Nelson v. Miller, 11 Ill. 2d 378, 392, 143 N. E. 2d 673, 680 (1957), the court said:

"* * * The word 'tortious' can, of course, be used to describe conduct that subjects the actor to tort liability. For its own purposes the Restatement so uses it. (Restatement, Torts, § 6.) It does not follow, however, that the words must have that meaning in a statute that is concerned with jurisdictional limits."

And in Gray v. American Radiator & Sanitary Corp. 22 Ill. 2d 432, 436, 176 N. E. 2d 761, 763 (1961), it said:

"* * * In determining legislative intention courts will read words in their ordinary and popularly understood sense. [Citations omitted.] We think the intent should be determined less from technicalities of definition than from considerations of general purpose and effect. * * * [T]he test should be concerned more with those substantial elements of convenience and justice presumably contemplated by the legislature. As we observed in Nelson v. Miller, 11 Ill. 2d 378, [143 N. E. 2d 673] the statute contemplates the exertion of jurisdiction over nonresident defendants to the extent permitted by the due-process clause."

The action to establish paternity and to compel support of a child is civil in nature. State v. Tolberg, 273 Minn. 221, 222, 140 N. W. 2d 845, 846 (1966). The doing of an act prohibited by law or the neglect to perform a duty imposed by law, resulting in damages to another, creates a legal liability, Baxter v. Coughlin, 70 Minn. 1, 72 N. W. 797 (1897), and may be denominated a tort

within the scope of the long-arm statute. By failing to perform his statutory duties of support, defendant has caused foreseeable damages to complainant. Contrary to defendant's contention, complainant mother has indeed suffered injury, for, quite apart from the physical and emotional trauma of bearing the child and rearing it alone, she is faced with the financial burdens of medical and hospital bills. She is also confronted with the expense of rearing their child and possible impairment of her earning power. For similar reasons, paternity actions such as this were held subject to state long-arm statutes in Poindexter v. Willis, 87 Ill. App. 2d 213, 231 N. E. 2d 1 (1967) ; and Neill v. Ridner, 286 N. E. 2d 427 (Ind. App. 1972).

We address a concluding observation to the discretion of the trial court in the exercise of the jurisdiction we hold it to have under the long-arm statute. A woman who bears an illegitimate child may not be able to establish the paternity of her child if she must initiate her action in a foreign jurisdiction. For her to be able to do so is of interest to this state, both for its citizens and for its own potential obligation of public support. But a man, whose paternity is more easily alleged than proved, may find it no less difficult to defend against a groundless accusation in a forum other than that of his own state. Neither party may be persons of financial means. A court, in fairness to these conflicting interests, may in these circumstances decide to condition its exercise of extra-territorial jurisdiction upon the complainant's making at least a minimal factual recitation of "probable" fatherhood, beyond a bare allegation of fatherhood. We have no report of the proceedings below, for the matter is here on an agreed statement of facts stating that complainant alleges that defendant is the father of her child, defendant acknowledging that he was within this state at the time the child was conceived. An additional factual recitation of the personal relationship between the parties at and about the time might well suffice, buttressed as it is by a complaint which is verified. See, Hunt v. Nevada State Bank, 285 Minn. 77, 82, 172 N. W. 2d 292,

296. Our affirmance of the order now before us will not foreclose defendant from making seasonable demand for such additional showing as the trial court may deem appropriate.

Affirmed.

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.